# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

ANGELA HERNANDEZ,
Defendant and Appellant.

S282186

Fifth Appellate District
F076752

Kern County Superior Court
BF150639A

---

August 13, 2026

Justice Groban authored the opinion of the Court, in which Chief Justice Guerrero and Justices Liu, Kruger, Evans, and Danner[*] concurred.

Justice Corrigan filed a concurring and dissenting opinion.

---

[*]    Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PEOPLE v. HERNANDEZ

S282186

Opinion of the Court by Groban, J.

For a noncitizen criminal defendant who is considering whether to enter a guilty plea, preserving the right to remain in the United States is often a crucial consideration.  Recognizing this, the Legislature has sought to ensure that defendants meaningfully understand the immigration consequences of their pleas.  Penal Code, section 1016.5,[1] requires courts, before accepting guilty pleas, to advise defendants that a criminal conviction may have serious immigration consequences.  (*Id*., subd.  (a).)  Section  1473.7,  subdivision  (a)(1) (section 1473.7(a)(1)) authorizes courts to vacate convictions when a defendant shows "prejudicial error damaging [their] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence."

This case concerns a section 1473.7(a)(1) motion brought by Angela Hernandez, a long-time lawful permanent resident of the United States who seeks to withdraw her guilty plea to two controlled substance charges.  Two years after entering the plea, Hernandez traveled to Mexico.  Returning home to California, she presented herself to immigration authorities at the airport, who detained her and initiated removal proceedings against her.  Hernandez claims that she did not understand that pleading

---

[1]    All  further  unspecified  statutory  references  are  to  the Penal Code.

1

guilty would make her subject to deportation. She claims that if she had understood this, she would have attempted to negotiate a different plea or taken her case to trial.

The trial court denied Hernandez's motion. The court concluded that her attorney had "properly advised" her "regarding the immigration consequences of entering a plea" — a conclusion based largely on Hernandez's initials next to the immigration consequences advisement on her plea form and her attorney's signature under a preprinted statement on the same form attesting that he had explained the immigration consequences to her. The Court of Appeal affirmed.

On independent review, we reverse. When ruling on a section 1473.7(a)(1) motion, a court should consider the totality of the circumstances and focus on the defendant's subjective understanding. Evidence that a defendant received the immigration consequences advisement required by section 1016.5 before entering their plea is relevant, but not dispositive. Courts rely on defense counsel to ensure that defendants meaningfully understand the immigration consequences of a plea and can make informed decisions whether to accept those consequences. Considering the totality of the circumstances, we hold that Hernandez has established prejudicial error that damaged her "ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences" of her convictions. (§ 1473.7(a)(1)).

## I.   BACKGROUND

In 2013, Kern County Sheriff's deputies arrested Hernandez outside a store in Delano. In Hernandez's car were five trash bags full of marijuana. The trash bags had been placed there by a confidential informant who had recruited

Hernandez to transport them from a nearby vineyard. Hernandez was charged with one count of unlawful transportation of marijuana (Health & Saf. Code § 11360, subd. (a)) and one count of unlawful possession of marijuana for sale (*id.*, § 11359). Hernandez pled guilty to both crimes as charged.

Hernandez is a citizen of Mexico. She immigrated to the United States when she was 19 years old. When she entered her plea, she was 55 years old, had lived in the United States for 36 years, and had been a lawful permanent resident for over 20 years. Her "whole family" lived in the United States. She was married and had five children, all either United States citizens or lawful permanent residents, and 14 grandchildren, two of whom she cared for several times a week. Her mother was deceased and her father lived in California. She had no prior criminal record.

The parties appear to agree that Hernandez's guilty pleas to the controlled substance charges exposed her to mandatory removal and exclusion from the United States and rendered her ineligible for almost all forms of immigration relief.

In connection with her plea, Hernandez signed a form titled "Felony Advisement of Rights, Waiver, and Plea Form." The form was printed in English and contained a long list of advisements. Among them was a modified version of the immigration consequences advisement required by section 1016.5, in which the word "will" was substituted for the statutory "may" and additional language was added. (See *id.*, subd. (a) ["If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged *may* have the consequences of deportation, exclusion from admission to the United States, or denial of

naturalization pursuant to the laws of the United States" (italics added)].)  The form's advisement read:  "ALIEN STATUS:  I understand that if I am not a Citizen of the United States, my guilty or no contest plea will result in my deportation, exclusion from admission to the United States, and denial of naturalization under the laws of the United States. **Deportation is mandatory for some offenses.  I have fully discussed this matter with my attorney and understand the serious immigration consequences of my plea.**"  Hernandez's initials appeared on a line next to this paragraph.

At the bottom of the plea form, just above Hernandez's signature, was a preprinted declaration stating that she had read, understood, and initialed each item on the form.  The form also contained two preprinted statements, one signed by her retained attorney, J.M. Irigoyen, and the other signed by a Spanish-language interpreter.  Irigoyen's stated, as relevant here, that he had reviewed the form with his client, had "explained any possible immigration consequences that may result from this plea," and was satisfied his client understood "these things."  The interpreter certified that they had translated the "entire form" into Spanish for the defendant, who had stated that she "understood the contents of the form."

At the bottom of the form was a preprinted paragraph titled "Court's Findings and Order," which stated, as relevant here, that "the defendant's plea(s) and admission(s) are freely and voluntarily made with an understanding of the nature and consequences thereof."  The trial court judge signed and dated the order.

Irigoyen appeared on behalf of Hernandez for the first and only time at her change of plea hearing.  (At her other

4

appearances, including her sentencing, she was represented by a different attorney who was handling some appearances for Irigoyen at the time.) During the brief plea colloquy, there was no mention of possible immigration consequences. Irigoyen informed the court that Hernandez was pleading "straight up to both charges." He noted that the district attorney had offered "local time" and that the court had indicated a sentence of 180 days. In response to a series of yes/no questions from the trial court, Hernandez orally confirmed that she wanted to enter a plea on those terms, had completed the plea form, understood the form, and did not have any questions. Irigoyen requested that the court set the case for sentencing several weeks out so that Hernandez could spend Christmas at home, to which the district attorney assented.

The probation office recommended a sentence of probation and indicated that if "additional sanctions" were required in the future, the "low term" of two years would be "warranted." At sentencing, the court imposed three years' probation with 180 days in county jail, in accordance with its indicated sentence. The court advised Hernandez that if she left the United States, she was to "maintain contact with probation by mail" and she was "not to reenter the United States without proper authorization." Hernandez ultimately served only 27 days in jail.

About two years after her conviction, while still on probation, Hernandez obtained permission from the probation department to make a trip to Mexico. On her return, she presented herself for entry to immigration and customs officials at Los Angeles International Airport, who detained her, confiscated her lawful permanent resident card, and initiated removal proceedings against her.

Hernandez filed a habeas corpus petition in the trial court, claiming ineffective assistance of counsel. She asked the court to allow her to withdraw her plea and to reinstate the original charges so that she could defend against them with the benefit of an accurate understanding of their immigration consequences. She alleged that Irigoyen had advised her to plead guilty as charged and that he did not inform her of the immigration consequences of doing so or of possible defenses or alternative pleas.

Before the court ruled on her habeas corpus petition, Hernandez successfully completed probation. At Hernandez's request, the court then converted her petition to a petition under section 1473.7 — which had taken effect very recently — and set the matter for an evidentiary hearing.

The evidentiary hearing was conducted by the same judge who took Hernandez's plea. Irigoyen had died not long before Hernandez filed her habeas corpus petition, and Hernandez was the only witness at her hearing. Hernandez testified that Irigoyen had told her that she "had to plead guilty" and had not told her that she would almost certainly get deported if she did so, even though she had informed him that she was a noncitizen. She testified that if she had known that mandatory deportation was a consequence of her plea, she would have gone to trial because she did not "want to be sent to Mexico."

On cross-examination, Hernandez acknowledged that she had signed the plea form containing the immigration consequences advisement but testified that she did not remember reviewing the form with Irigoyen. The district attorney asked the interpreter to read the advisement to Hernandez, who volunteered, "Never was I told that. Never." In

response to further questioning, Hernandez admitted that her initials appeared next to the advisement on the form. She testified that she remembered "signing some documents," but that Irigoyen had never read the immigration consequences advisement to her or told her that she "could possibly be deported." When asked to explain how her initials and signature got on the form, she testified: "Well, because if he's my attorney and he's telling me, 'Sign here, initial here,' I'm going to sign." Hernandez further testified that she did not remember an interpreter reading the form to her or the court asking if she understood everything in the form. She explained, "I was really nervous then too."

The district attorney then had the court interpreter read Hernandez the transcript of the portion of her plea colloquy in which she responded "yes" when asked whether she had read and understood everything in the plea form and "no" when asked whether she had any questions. Hernandez testified, ". . . I never thought that it would be anything like that, like deportation."

Responding to questions about her interactions with Irigoyen outside of court, Hernandez testified that he did not speak Spanish and that the only time she had spoken to him with an interpreter was in court on the day of her hearing. Hernandez's new attorney had been unable to obtain Irigoyen's case file, and Hernandez's testimony was the only evidence of her out-of-court interactions with Irigoyen.

The trial court denied relief. The initial order purported to deny Hernandez's habeas corpus petition, even though the court had, by its previous order, converted the petition to a petition under section 1473.7. Hernandez moved for

reconsideration, arguing that the court had failed to consider whether she had shown that she was unable to meaningfully understand, defend against, or knowingly accept the immigration consequences of her plea — the showing required under section 1473.7(a)(1). In response, the trial court issued a new order denying the petition under section 1473.7 for substantially the same reasons it gave in its initial order, citing to habeas corpus cases in support of its ruling. The court concluded: "[F]rom the record of the plea and sentencing, it does appear that Mr. Irigoyen properly advised Ms. Hernandez regarding the immigration consequences of entering a plea. Her claims now appear to be '*post hoc* assertions' that are contradicted by the record of the plea."

Hernandez appealed, the Court of Appeal affirmed, and we granted review and ultimately transferred the case to the Court of Appeal for reconsideration in light of our opinion in *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*). The Court of Appeal again affirmed and we again granted review, later transferring the case for reconsideration in light of our opinion in *People v. Espinoza* (2023) 14 Cal.5th 311 (*Espinoza*).

The Court of Appeal affirmed for a third time in a divided, unpublished opinion. The majority read the advisement on the plea form as clearly informing Hernandez that her plea "*would* result in her deportation, exclusion from admission to the United States, and denial of naturalization under the laws of the United States." It also accorded deference to the trial court's "implied finding" that Hernandez's testimony "lacked credibility in light of the contemporaneous record of her plea." It concluded that Hernandez had failed to show that she "did not meaningfully understand the immigration consequences" of her plea.

The dissent observed that the trial court had focused on whether Hernandez "was adequately advised" rather than on "her subjective understanding of the immigration consequences." The dissenting justice would have concluded that Hernandez's testimony about her lack of understanding was sufficiently corroborated by objective evidence, particularly "the fact that she obtained permission from probation to travel to Mexico and returned on an international flight, which subjected her to the scrutiny of immigration officials at Los Angeles International Airport." He would have held that Hernandez did not "meaningfully understand the adverse immigration consequences of her plea."

We granted review for a third time and now reverse.

## II.  DISCUSSION

To establish eligibility to withdraw a guilty plea under section 1473.7(a)(1), a defendant must show, by a preponderance of the evidence, (1) "error damaging [the defendant's] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence" and (2) that the damage resulted in prejudice. (*Ibid.*; see *id.*, § 1473.7, subd. (f)(1) [standard of proof].)

In considering Hernandez's appeal of the trial court's denial of her section 1473.7(a)(1) motion, we independently review the evidence in the record. (*Vivar, supra*, 11 Cal.5th at pp. 526–528.) Because the trial court had the opportunity to observe Hernandez when she was giving her testimony, we defer to its factual findings to the extent that they turn on its assessment of Hernandez's credibility. (*Id.* at pp. 527–528.) We also accord deference to findings based on the trial court's

observations of Hernandez during the plea proceedings because the judge who heard Hernandez's section 1473.7(a)(1) motion was the same judge who took her plea. (*Vivar*, at p. 528.) But we do not defer to those findings that are based on written materials, since we are similarly situated to the trial court when interpreting a "cold record." (*Ibid*.) And we may " ' 'reach a different conclusion [from the trial court] on an independent examination of the evidence . . . even where the evidence is conflicting" ' " and the trial court's conclusions are based in part on its assessment of " ' "the credibility of witnesses [it] heard and observed." ' " (*Id*. at p. 527.) Ultimately, it is for us to decide, exercising our independent judgment, whether the evidence, taken as a whole, establishes "prejudicial error" damaging Hernandez's ability to meaningfully understand the immigration consequences of the charges to which she pled, or her ability to defend against those consequences or to knowingly accept them. (§ 1473.7(a)(1); see *Vivar*, at p. 528.)

## A. Hernandez Has Established Error

Hernandez contends that, in concluding that she had not established error, the courts below gave undue weight to the written record of her plea, particularly to the preprinted immigration consequences advisement on her plea form. The proper inquiry, she argues, considers the totality of the circumstances and focuses on a defendant's subjective understanding. The Attorney General agrees with Hernandez about the nature of the inquiry but argues that Hernandez has not made the showing required to establish error. Exercising our independent judgment and considering the totality of the circumstances, we conclude that Hernandez has made the required showing.

> *1. In Evaluating Error, Courts Consider All Evidence Relevant to the Defendant's Ability To Meaningfully Understand, Defend Against, or Knowingly Accept the Immigration Consequences of a Conviction*

In determining whether a defendant has established error for purposes of section 1473.7(a)(1), we focus on the defendant's subjective understanding at the time they entered their guilty plea. (*People v. Alatorre* (2021) 70 Cal.App.5th 747, 769 (*Alatorre*).) We ask whether the defendant has shown that they were unable to "meaningfully understand" the immigration consequences of their plea, or that their ability to "defend against" or "knowingly accept" those consequences was impaired. (§ 1473.7(a)(1); see *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 905–911 (*Manzanilla*).) "The key is the mindset of the defendant and not what an objectively reasonable person would have understood under the circumstances." (*People v. Carrillo* (2024) 101 Cal.App.5th 1, 16 (*Carrillo*).)

A defendant may establish error by showing that they entered a plea without a meaningful understanding of the "actual or potential adverse immigration consequences" of the resulting conviction or sentence. (§ 1473.7(a)(1).) For example, a defendant may show that their attorney provided incomplete or inaccurate advice about the plea's immigration consequences or did not effectively communicate the immigration consequences, so the defendant entered the plea without a meaningful understanding of them. (§ 1473.7(a)(1).) Alternatively, a defendant may show error in the form of subjective misunderstanding or ignorance that damaged their ability to "defend against" these consequences. (§ 1473.7(a)(1).) For example, a defendant may show that they were unaware of

possible alternative approaches to their defense that could have mitigated the immigration consequences or led to an immigration-safe disposition. Such approaches may include alternative pleas or sentences they could have attempted to negotiate or defenses they could have raised at trial. (See *Vivar*, *supra*, 11 Cal.5th at pp. 531–532; *People v. Camacho* (2019) 32 Cal.App.5th 998, 1009 (*Camacho*).) Finally, a defendant may establish error by showing that they did not "knowingly accept" the consequences of their conviction. (§ 1473.7(a)(1).) For example, evidence that a defendant sought to withdraw their plea when they learned of its consequences, that they applied for an immigration benefit after entering their plea, or that they contested their removal can support a showing that the defendant did not knowingly accept the immigration consequences of their conviction.

Because the error inquiry focuses on the defendant's subjective understanding, courts evaluating section 1473.7(a)(1) motions must look beyond the record of the plea and consider the totality of the circumstances bearing on the inquiry. (Cf. *People v. Mosby* (2004) 33 Cal.4th 353, 361 [going "beyond the courtroom colloquy" and examining the "totality of circumstances" to evaluate whether plea was knowing and voluntary]; *People v. Patterson* (2017) 2 Cal.5th 885, 898–899 (*Patterson*) [in deciding whether to permit withdrawal of guilty plea under § 1018 based on defendant's mistake or ignorance courts consider " 'all factors necessary to bring about a just result' "].) Courts must engage in a case-specific examination that involves assessing credibility and weighing circumstantial evidence. (See *Espinoza*, *supra*, 14 Cal.5th at p. 320 [considering evidence of the court's advisement, counsel's advice, and defendant's statements and actions in determining

that defendant had established that he "did not meaningfully understand the immigration consequences of his plea"].) While the focus of the error inquiry is on the defendant's subjective understanding, a defendant's bare assertion that they did not understand the immigration consequences or the options available to them to defend against those consequences is insufficient to establish error; the assertion must be corroborated by objective evidence. (Cf. *Vivar*, *supra*, 11 Cal.5th at p. 530 [requiring objective evidence to support assertion that defendant would not have entered plea].)

Such evidence may include evidence related to the quality of defense counsel's representation of the defendant and the nature of their interactions. (See *People v. Benitez-Torres* (2025) 112 Cal.App.5th 1252, 1266–1268 (*Benitez-Torres*).) This evidence may be contained in the record of the plea, including defense counsel's written and oral representations to the court; in the defendant's case file; or in declarations or testimony by the defendant, defense counsel, witnesses, or immigration law experts. (See *Espinoza*, at p. 324; *People v. Rodriguez* (2021) 68 Cal.App.5th 301, 322 (*Rodriguez*); *Benitez-Torres*, *supra*, 112 Cal.App.5th at pp. 1267–1268; *Manzanilla*, *supra*, 80 Cal.App.5th at pp. 905–911.) Relevant evidence includes evidence of whether counsel inquired about the defendant's current immigration status and plans to apply for immigration benefits;[2] whether counsel fully advised the defendant of

---

[2] We use the term "immigration benefits" to refer generally to any sort of legal authorization that allows a noncitizen to lawfully enter the United States or remain here to live, work, study, or travel, either temporarily or permanently. Such benefits include immigrant and nonimmigrant visas, various

definite and potential immigration consequences of the conviction and sentence that would result from the plea; whether counsel's advice about the immigration consequences of the plea was accurate; whether counsel informed defendant of potential alternative pleas that would have eliminated or mitigated the immigration consequences; whether counsel attempted to negotiate such a plea with the prosecution; and whether counsel discussed with the defendant the advantages and disadvantages of going to trial, including possible defenses to the charges. (See *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1176–1177 (*Curiel*); *Manzanilla*, at pp. 905–911; *People v. Villalba* (2023) 89 Cal.App.5th 659, 671–673 (*Villalba*); *Carrillo*, *supra*, 101 Cal.App.5th at p. 17; § 1016.3, subds. (a) & (b).) Evidence of whether the defendant or defense counsel consulted with an immigration law expert about immigration consequences and possible alternative pleas — either before or after the plea — and if so, of the advice received, is also relevant. (See *Espinoza*, at p. 324; *Camacho*, *supra*, 32 Cal.App.5th at pp. 1003, 1009.) A showing of ineffective assistance of counsel may support a finding of error, but a defendant may establish error without proving that counsel's performance was constitutionally deficient. (§ 1473.7(a)(1); *Vivar*, *supra*, 11 Cal.5th at p. 523; *Camacho*, at p. 1007.)

Relevant evidence also includes evidence of the trial court's efforts to confirm that the defendant understood the

---

forms of humanitarian relief, adjustment of status to permanent residency, relief from removal, employment authorization, family reunification, and naturalization. (See 8 C.F.R. § 1.1 et seq. (2026).)

immigration consequences of entering a guilty plea and had an opportunity to discuss them with their attorney and tailor their defense strategy accordingly. (See *Manzanilla, supra,* 80 Cal.App.5th at pp. 899–900, 910–911.) Such evidence may be found in the written record, including the advisements and findings contained in the plea form, and the transcript of the plea proceedings, including any discussion related to immigration consequences in the plea colloquy. Evidence that the trial court gave the defendant the generic advisement of immigration consequences required by section 1016.5 is relevant because it tends to show that the defendant was made aware of the possibility that a conviction could have serious immigration consequences and the need to consult with an attorney about any immigration-related concerns; however, such evidence does not alone show that the defendant received complete and accurate advice and meaningfully understood that advice. (See § 1016.5, subd. (d); *Espinoza, supra,* 14 Cal.5th at p. 320; *People v. Padron* (2025) 109 Cal.App.5th 950, 962 (*Padron*); *Manzanilla,* at p. 906; § 1016.5, subd. (a); cf. *Patterson, supra,* 2 Cal.5th at pp. 897–898.) Evidence that the trial court gave a confusing or inaccurate advisement would tend to support a finding of error. (*Villalba, supra,* 89 Cal.App.5th at pp. 671, 675; cf. S.B. No. 281 (2025–2026 Reg. Sess.) [amending section 1016.5 to require courts to give statutory advisement "verbatim"].) Evidence of whether the court provided the defendant "additional time to consider the appropriateness of the plea in light of the advisement" and consult with counsel is also relevant. (§ 1016.5, subd. (b); see § 1016.3, subds. (a) & (b).)

And finally, relevant evidence includes evidence of the defendant's subjective understanding, or lack thereof, of the

immigration consequences of the plea and their options for avoiding or mitigating those consequences. The most direct evidence of a defendant's subjective understanding consists of the defendant's own statements to the court when entering the plea and in declarations or testimony given in support of their section 1473.7(a)(1) motion. (See *Carrillo*, *supra*, 101 Cal.App.5th at p. 17 [defendant "is the only one with direct access to his state of mind"].) A defendant's testimony that they did not understand the immigration consequences or their options for defending against those consequences may be corroborated by evidence of the defendant's priorities relevant to the plea. This includes evidence of the defendant's immigration status and prospects of obtaining immigration benefits; evidence of how long the defendant has lived in the United States, at what age they came here, and the strength of their ties to their country of origin; and evidence of the nature and extent of the defendant's ties to the United States and their family and community in this country. (*Espinoza*, *supra*, 14 Cal.5th at p. 320; *Padron*, *supra*, 109 Cal.App.5th at p. 962; *Curiel*, *supra*, 92 Cal.App.5th at p. 1177.)

Evidence of the defendant's personal characteristics may also shed light on their ability to understand the plea, its consequences, and their options. This includes evidence of the defendant's education level, occupation, intellectual capacity, mental health, disability, literacy, age, and sophistication; evidence of the defendant's English language proficiency and ability to understand the interpreter, if any; and evidence of the defendant's prior experience with the criminal justice system. (*People v. Diaz* (2022) 76 Cal.App.5th 102, 114–115; *Padron*, at p. 961; *Carrillo*, *supra*, 101 Cal.App.5th at p. 18; *Manzanilla*, *supra*, 80 Cal.App.5th at p. 906.) Such evidence may be

presented through documents and through declarations or testimony of family members, friends, medical professionals, defense counsel, and others.

Evidence of a defendant's statements and conduct during and after the plea proceedings may suggest understanding and informed acceptance of immigration consequences or lack thereof. This includes evidence that the defendant either voluntarily brought themselves to the attention of immigration authorities — for example, by presenting themselves for admission at an airport or border crossing station or by applying for an immigration benefit — or that the defendant avoided contact with immigration authorities; evidence of whether or not the defendant understood they would be placed in removal proceedings or transferred to immigration custody after completing their sentence; and evidence that the defendant expressed concerns about potential immigration consequences of their conviction either before or after entering their plea. (*Espinoza, supra,* 14 Cal.5th at p. 320; *Curiel, supra,* 92 Cal.App.5th at p. 1177; *Alatorre, supra,* 70 Cal.App.5th at p. 770.) Evidence of the defendant's concern about immigration consequences (or lack of such concern) may be found in interactions with friends, family members, the sentencing court, the probation department, or attorneys. (See *Vivar, supra,* 11 Cal.5th at p. 522; *People v. Diaz, supra,* 76 Cal.App.5th at p. 115; *Manzanilla, supra,* 80 Cal.App.5th at pp. 899–900, 910–911; *Camacho, supra,* 32 Cal.App.5th at p. 1009.)

Because the burden is on the defendant to establish error and because courts must consider the totality of the circumstances in determining whether the defendant has satisfied this burden, it will generally be in a defendant's interest to create a robust record. (See *Espinoza, supra,*

14 Cal.5th at p. 325 ["The more robust and inclusive a record, the greater the opportunity for effective persuasion and meaningful judicial review"].) However, "no specific kind of evidence is a prerequisite to relief." (*Ibid.*)

### 2. *The Preponderance of the Evidence Shows Error*

As we have noted, Irigoyen died before Hernandez filed her habeas corpus petition and her new attorney was not able to obtain any records Irigoyen may have kept related to her case.[3] The record here consists primarily of the court records from Hernandez's plea and sentencing and her testimony at the evidentiary hearing on her section 1437.7(a)(1) motion. In our independent review of this record, we give deference to the trial court's factual findings to the extent that they were based on the court's observations of Hernandez when testifying. (*Vivar*, *supra*, 11 Cal.5th at pp. 527–528; *Curiel*, *supra*, 92 Cal.App.5th at pp. 1174–1175.)

Although the trial court did not expressly rely on its observations of Hernandez, its conclusion that Hernandez's claims were based on "*post hoc* assertions" implies that it did not credit Hernandez's testimony that she was "never" given the immigration consequences advisement and that Irigoyen never told her that she "could possibly be deported." Our independent review confirms that this testimony is "contradicted by the

---

[3]   When available, a declaration or testimony from plea counsel can be very helpful in establishing eligibility for section 1473.7(a)(1) relief. (See, e.g., *Camacho*, *supra*, 32 Cal.App.5th at pp. 1002–1005 [defense counsel's testimony established that he had inadequately researched immigration consequences and had given inaccurate advice].) However, "[a] party seeking relief under section 1473.7 is not required to provide the declaration of plea counsel." (*Espinoza*, *supra*, 14 Cal.5th at p. 325.)

record of the plea": The plea form indicates that Hernandez received an immigration consequences advisement and that Irigoyen discussed it with her. We therefore credit the trial court's implied finding that Hernandez's testimony that she was "never told" she could possibly be deported was not credible.

Other aspects of Hernandez's testimony, however, are credible and supported by the record of her criminal case. Significantly, Hernandez testified that, although she answered "yes" when the court asked her whether she understood everything in the plea form, she "never thought that it would be anything like that, like deportation." Her testimony that she did not understand she would be deported is corroborated, most compellingly, by evidence that just two years after entering her plea, she obtained permission from the probation department to travel to Mexico and on her return, presented herself to immigration authorities at the airport, triggering proceedings to revoke her permanent residency and deport her. We found error based on similar evidence in *Espinoza, supra,* 14 Cal.5th at page 320. Like Hernandez, Espinoza was a long-time permanent resident who, after pleading guilty to an offense that made him deportable and barred his reentry, "took an international commercial flight to the United States." (*Ibid.*) We observed that doing so "predictably required subjecting himself to the scrutiny of United States immigration officials." (*Ibid.*) We reasoned that voluntarily bringing oneself to the attention of immigration authorities in this way "is not consistent with the behavior of a person who understood that his convictions effectively ended his lawful resident status." (*Ibid.*) Given Hernandez's long-term residence in the United States, her status as a lawful permanent resident, and her close and extensive family ties in California, her decisions to seek and

obtain permission from the probation department to leave the United States, to travel to Mexico, and to attempt to lawfully reenter through a port of entry support an inference that she did not "meaningfully understand" the immigration consequences of her conviction. (§ 1473.7(a)(1); see *Espinoza*, at p. 320; *Alatorre, supra*, 70 Cal.App.5th at pp. 770–771.)

Hernandez's testimony about the circumstances in which she entered her plea further supports her claim that she did not meaningfully understand the immigration consequences of doing so. When asked to explain why she pled guilty, Hernandez testified that Irigoyen told her that she "had to." Hernandez acknowledged that she signed the plea form and initialed the immigration advisement on it, but she asserted that Irigoyen had not explained the advisement to her. When asked why she had signed the plea form without understanding it, she explained: "if he's my attorney and he's telling me, 'sign here, initial here,' I'm going to sign." When asked why she answered "yes" when the court asked her whether she understood the plea form, she responded that she was "really nervous."

Other evidence corroborates Hernandez's account. The record shows that Hernandez required a Spanish-language interpreter for all her court appearances. Irigoyen did not speak Spanish, and the only time she met with him with an interpreter was at the court on the day she entered her plea. Irigoyen did not request additional time from the court to counsel Hernandez on the immigration consequences of pleading guilty or her options for defending against them. (See § 1016.5, subd. (b).) Hernandez, having no record of prior criminal conduct, had never entered a plea before. And the plea colloquy was brief, consisting of a series of yes/no questions with no direct reference to immigration consequences.

Moreover, the meaning of the form immigration consequences advisement that Hernandez initialed is far from clear.  It begins:  "I understand that if I am not a Citizen of the United States, my guilty or no contest plea will result in my deportation, exclusion from admission to the United States, and denial of naturalization under the laws of the United States."  The seemingly unequivocal phrasing of this acknowledgement ("will result") is undermined by its appearance on a standard, preprinted form presented to all felony defendants regardless of their specific criminal charges or their immigration status.  Further ambiguity emerges from what follows:  a bold-print advisement that "[d]eportation is mandatory for some offenses" and a preprinted attestation that "I have fully discussed this matter with my attorney and understand the serious immigration consequences of my plea."  By observing that deportation is mandatory for "some" offenses and suggesting that defendants should have discussed immigration consequences with their attorneys, the advisement conveys that it was not intended as personalized immigration advice but instead was meant to warn defendants of *potential* immigration consequences and to help ensure that they receive complete and accurate immigration advice from their attorneys before entering their pleas.  (See § 1016.3.)  Considering Hernandez's personal characteristics and background, the record of the plea proceedings corroborates her testimony that she pled guilty because her attorney told her to and that, despite her signature and initials on the form advisement and her testimony that she understood the form's content, she did not meaningfully understand the immigration consequences of her plea.

The evidence in the record also shows error impairing Hernandez's ability to "defend against" the immigration consequences of her plea. (§ 1473.7(a)(1).) Hernandez testified that she spoke with Irigoyen with the help of an interpreter for the first time at her plea hearing and that she agreed to plead guilty as charged on that day because Irigoyen told her to. The record of the plea proceeding is consistent with Hernandez's account: It shows that Irigoyen appeared on Hernandez's behalf for the first time at her plea hearing and that he did not ask the court for additional time to consult with her about possible immigration consequences or to engage in plea bargaining. (See §§ 1016.3, 1016.5, subd. (b); *Rodriguez*, *supra*, 68 Cal.App.5th at p. 326; *Padron*, *supra*, 109 Cal.App.5th at p. 960.) Taken together, Hernandez's testimony and the record of the plea show that she was not informed, before entering her plea, about possible alternative pleas, the risks and benefits of pleading guilty as charged versus taking her case to trial, or possible defenses she could pursue at trial.

Finally, the record shows impairment of Hernandez's ability to "knowingly accept" the immigration consequences of her convictions. (§ 1473.7(a)(1).) Hernandez testified that she did not want to be "sent to Mexico." Evidence of her extensive, deep, and longstanding ties to the United States corroborates this testimony. Indeed, the Attorney General acknowledges that Hernandez's deportation would be "devastating" for Hernandez, her family, and her community. Her conduct also corroborates her testimony: She obtained permission from probation before traveling to Mexico, and when immigration authorities detained her as she attempted to lawfully reenter the country and confiscated her permanent resident card, she did not consent to deportation. Instead, she contested the

immigration charges and retained an attorney to help her attempt to withdraw her plea. All this suggests that Hernandez did not knowingly accept the immigration consequences of her plea.

In sum, considering the totality of the circumstances, a preponderance of the evidence in the record shows error impeding Hernandez's ability to meaningfully understand the immigration consequences of her plea and to defend against or knowingly accept those consequences.[4]

---

[4] The concurring and dissenting opinion suggests that we have not identified the error here or specified whose error it was. (Conc. & dis. opn. of Corrigan, J., *post*, at pp. 1–2.) The opinion seems to read section 1473.7(a)(1) as requiring a finding of a specific legal error committed by counsel or by the court when taking the plea. (Conc. & dis. opn. of Corrigan, J., *post*, at pp. 1– 4, 7–10.) As we have explained, however, for purposes of section 1473.7(a)(1), the error determination turns on the defendant's state of mind as established by the defendant's testimony about their subjective understanding and corroborated by objective evidence. (See p. 13, *ante*.) Error may take the form of the defendant's lack of a meaningful understanding of the "actual or potential adverse immigration consequences" of their plea; the defendant's subjective misunderstanding or ignorance that damaged their ability to "defend against" these consequences; or the defendant's failure to "knowingly accept" these consequences. (§ 1473.7(a)(1).) The record here shows all three types of error on Hernandez's part.

The concurring and dissenting opinion suggests that we should provide guidance on "what courts and counsel must do going forward to protect defendants and avoid error." (Conc. & dis. opn. of Corrigan, J., *post*, at pp. 1–2.) We agree that such guidance is useful. Some guidance on the steps courts and counsel should take is implicit in our description of the evidence a defendant may use to demonstrate error. (See pp. 13–15,

> 3. *Evidence That Hernandez Received an Immigration Consequences Advisement Does Not Defeat Her Showing of Error*

The Attorney General, echoing the reasoning of the Court of Appeal, points to the trial court's conclusion that Hernandez's claims were based on "*post hoc* assertions" that are "contradicted by the record of the plea" to argue that she has not established error. In affirming the trial court's ruling, the Court of Appeal accorded "particular deference" to this conclusion, characterizing it as an "implied finding" that Hernandez's testimony that she was never told that she could be deported was not credible. Hernandez concedes that the record shows that she was given the immigration consequences advisement

---

*ante*.) And other statutory provisions address the responsibilities of courts and counsel. (See §§ 1016.5, 1016.3, subd. (a).) Section 1473.7(a)(1), however, focuses on the defendant's misunderstanding or ignorance.

Finally, the concurring and dissenting opinion says that we rely on "substantial speculation" and suggests that remand to the trial court would be appropriate to afford Hernandez an opportunity to further develop the record in light of our guidance. (Conc. & dis. opn. of Corrigan, J., *post*, at p. 10.) To be sure, remand to the trial court for further development of the record will be appropriate in many appeals from denials of section 1473.7(a)(1) motions that are pending when we issue our decision. As the concurring and dissenting opinion observes, remand would allow the defendant an opportunity to make a fuller presentation of evidence with the guidance we have provided in mind and would permit the trial court to make a new ruling taking that additional evidence into account. (Conc. & dis. opn. of Corrigan, J., *post*, at pp. 10–11.) But remand is unnecessary where, as here, the evidence in the record establishes the defendant's eligibility for relief.

contained in the plea form, but she argues that this does not defeat her showing of error.  We agree.

As we have explained, the error inquiry under section 1473.7(a)(1) does not turn solely on what Hernandez was *told*.  Although evidence of what a defendant was told is relevant to the inquiry, its ultimate focus is on what the defendant subjectively *understood*.  The trial court's orders reflect that it misunderstood the inquiry as turning on whether Irigoyen misadvised Hernandez.  The court's initial ruling purported to deny Hernandez's habeas corpus petition, in which she had alleged ineffective assistance of counsel, not her section 1473.7(a)(1) motion.  Even after correcting that error, the court denied Hernandez's motion based on its conclusion that Irigoyen had "properly advised" her, citing exclusively to habeas corpus cases.  That the trial court treated the section 1473.7(a)(1) inquiry as an ineffective assistance of counsel inquiry is unsurprising giving the timing of Hernandez's motion and the procedural history of her case.  Hernandez initially made her request to withdraw her plea in a habeas corpus petition, and the focus of the evidentiary hearing was on whether Hernandez had received accurate immigration advice.  Moreover, it was not until after Hernandez's evidentiary hearing that section 1473.7(a)(1) was amended to clarify that a defendant need not establish ineffective assistance of counsel to be eligible for relief — a clarification prompted by early Court of Appeal decisions that had interpreted the statute in the same way the trial court appears to have interpreted it here.  (See Assem. Bill No. 2867 (2017–2018 Reg. Sess.) § 2; *Camacho, supra*, 32 Cal.App.5th at pp. 1005–1008 [describing legislative history of amendment].)

Whatever the source of the trial court's apparent misunderstanding, the law is now clear that having received an immigration consequences advisement does not preclude a defendant from establishing that they did not meaningfully understand the immigration consequences of their plea, potential alternative pleas, or the relative risks of going to trial. (See *Espinoza*, *supra*, 14 Cal.5th at p. 320; *Padron*, *supra*, 109 Cal.App.5th at pp. 961–962; *Manzanilla*, *supra*, 80 Cal.App.5th at p. 906.) The first sentence of the advisement in Hernandez's plea form is a modified version of the advisement required by section 1016.5, subdivision (a), which directs courts to inform defendants that a conviction "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization." (*Ibid*.) We expect that when defendants receive this advisement, they will seek advice from counsel and rely on counsel's evaluation of the applicable law, the evidence, and possible alternative pleas or defenses, considering the defendants' personal backgrounds and priorities. (See *Patterson*, *supra*, 2 Cal.5th at pp. 896–897; *In re Resendiz* (2001) 25 Cal.4th 230, 240 (plur. opn. of Werdegar, J.); § 1016.5, subds. (b), (d).) An advisement of the potential immigration consequences that is given by the judge taking a plea "is not designed, nor does it operate, as a substitute for such advice." (*Patterson*, at p. 898; *Padron*, at p. 962.)

Indeed, a judge in a plea-taking role is ill-suited to the task of providing affirmative, concrete, specific advice about the immigration consequences of convictions. While there are some cases in which the application of immigration law to a defendant's circumstances and charges will be "truly clear," there are many others in which it will be "unclear or uncertain." (*Padilla v. Kentucky* (2010) 559 U.S. 356, 369; see *Patterson*,

*supra*, 2 Cal.5th at pp. 897–898.) "With only a small degree of hyperbole, the immigration laws have been termed 'second only to the Internal Revenue Code in complexity.' " (*Castro-O'Ryan v. INS* (9th Cir. 1987) 847 F.2d 1307, 1312.) The application of immigration law to any individual defendant's circumstances requires not only familiarity with this complex legal labyrinth, but also an assessment of information about a noncitizen's personal background.[5] It is not a court's duty to provide this counseling when taking a plea. Courts are often unaware of the immigration status of defendants appearing before them, much less of the life circumstances relevant to a noncitizen defendant's eligibility for immigration benefits or relief from deportation. (See § 1016.5, subd. (d) [providing that "at the time of the plea no defendant shall be required to disclose their legal status to the court"]; Evid. Code, § 351.4, subd. (a) [requiring in camera hearing on admissibility before evidence of immigration

---

[5]     Personal details unrelated to the charges defendants face can determine the effects of a conviction on the defendant's immigration status or eligibility for immigration benefits. (See, e.g., 8 U.S.C. § 1431(a) [providing for automatic acquisition of U.S. citizenship by children born abroad in certain circumstances]; *id.*, § 1229b(b)(1)(D) [providing for cancellation of removal for certain nonpermanent residents who can establish that their deportation would cause "exceptional and extremely unusual hardship" to a close relative]; *id.*, § 1101(a)(15)(U) [providing path to lawful permanent residence for certain crime victims]; *id.*, § 1158 [providing asylum for certain noncitizens who fear persecution if they return to their home countries]; *Padron, supra*, 109 Cal.App.5th at p. 962 [noting that general advisement did not speak to defendant's "particular status as an asylee"].)

status may be disclosed in open court].)[6]  That a court advised a defendant, when taking their plea, that their offense could or would have serious immigration consequences is therefore not dispositive of the error determination.  (See *Curiel, supra,* 92 Cal.App.5th at pp. 1175–1176; cf. *Padron, supra,* 109 Cal.App.5th at pp. 961–962 [prosecutor's advisement].)  That determination ultimately turns on whether the defendant meaningfully understood the immigration consequences of the plea and was able to defend against or knowingly accept those consequences.  (§ 1473.7(a)(1).)

The Attorney General acknowledges that an immigration consequences advisement is not a substitute for the "accurate and affirmative" advice of an attorney and that the receipt of such an advisement does not prevent a defendant from establishing the subjective error required to obtain relief under section 1473.7(a)(1).  (§ 1016.3, subd. (a).)  He argues, however, that to credit Hernandez's testimony at her evidentiary hearing

---

[6]  With these limitations in mind, the Legislature recently amended section 1016.5, subdivision (a) to clarify that the advisement must be given "verbatim," i.e., using the word "may" rather than the more definitive language that many trial courts were employing, including the court in this case.  (See Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 281 (2025–2026 Reg. Sess.) as amended July 15, 2025, p. 4 [quoting sponsor's arguments that giving a "will" advisement "runs afoul of the clear judicial and legal doctrine that judges are not allowed to dispense legal advice to those who appear before them in court" and may dissuade defendants from seeking immigration advice from qualified attorneys].)  The Legislature specified, however, that for pleas accepted prior to January 1, 2026 (including Hernandez's) the amendment would not *require* a court to grant a motion to vacate the judgment, withdraw the plea, or otherwise find a conviction invalid where the court had failed to provide a verbatim advisement.  (§ 1016.5, subd. (e).)

that she did not understand that her plea could result in her deportation would be to conclude that Irigoyen and the interpreter misled the court by signing the statements on the plea form and to discredit Hernandez's own statements to the court when entering her plea. To be sure, the signatures of Irigoyen and the court interpreter on the preprinted statements on Hernandez's plea form suggest that the advisement was translated and explained to her and that they believed she understood it, and Hernandez's answers to the court during the plea colloquy suggest that she received the advisement and had no questions about it. This is all relevant to the error inquiry. Evidence that the form advisement was translated for Hernandez is particularly probative on these facts, considering Hernandez's need for a Spanish interpreter. But when considered in the context of the other evidence in the record, this evidence does not necessarily indicate that Hernandez meaningfully understood the immigration consequences of the charges against her, much less that she understood her options for defending against those consequences and knowingly accepted them. (§ 1473.7(a)(1).)

While we defer to the trial court's implied finding that Hernandez received the immigration consequences advisement in the plea form, we accord no deference to its legal conclusion that Irigoyen "properly advised" Hernandez. (See *Vivar*, *supra*, 11 Cal.5th at p. 524 [adequacy of counsel's advice is a predominantly legal question, reviewed independently].) Irigoyen's signature on the preprinted statement on the plea form saying that he "explained any possible immigration consequences" supports an inference that he provided Hernandez the advisement contained in the form. But the statement sheds no light on whether Irigoyen knew the

immigration consequences of the charged offenses and provided Hernandez complete and accurate advice about her options for defending against them. (See § 1016.3, subd. (a); *Camacho*, *supra*, 32 Cal.App.5th at p. 1009.) If Irigoyen was ignorant of the immigration consequences of the charged offenses, he could have signed the plea form believing that the part about explaining immigration consequences was inapplicable in Hernandez's case. (See, e.g., *Camacho*, *supra*, 32 Cal.App.5th at pp. 1002–1005; *Benitez-Torres*, *supra*, 112 Cal.App.5th at pp. 1268–1269.) Similarly, if Irigoyen only vaguely referenced the plea's immigration consequences, or if he merely read Hernandez the immigration consequences advisement, he could have believed that he had fulfilled his duty to explain "any possible immigration consequences" while failing to inform Hernandez of the immigration consequences in *her* case. (See, e.g., *Manzanilla*, *supra*, 80 Cal.App.5th at p. 905; *People v. Lopez* (2021) 66 Cal.App.5th 561, 578.) This case is somewhat unusual in that Irigoyen died before Hernandez filed her petition and Hernandez's new counsel was unable to obtain Irigoyen's case file. (But see *Espinoza*, *supra*, 14 Cal.5th at pp. 324–325 [15 years had passed since defendant entered plea and former defense counsel could not be contacted]; *Vivar*, *supra*, 11 Cal.5th 519 [counsel declined to submit declaration].) But the evidence that *is* available — including evidence of Hernandez's ties to the United States, that she voluntarily presented herself to immigration authorities, that Irigoyen appeared in court on Hernandez's behalf for the first and only time at her plea hearing, that Irigoyen did not ask the court for more time for plea negotiations, and that Hernandez pled guilty *as charged*, without any apparent effort to negotiate a plea with less dire immigration consequences — strongly indicates that

Irigoyen did not provide Hernandez complete and accurate advice.

And ultimately, the error inquiry does not turn solely on what Hernandez was told by Irigoyen or by the court. The focus of the error inquiry is the defendant's state of mind: what the defendant subjectively understood — or did not understand — when entering the challenged plea. Courts evaluating motions to vacate a conviction under section 1473.7(a)(1) should consider the totality of the circumstances and ask whether defendants meaningfully understood the actual and potential immigration consequences of their pleas and their options for defending against those consequences and whether they knowingly accepted those consequences when entering their pleas. The purpose of the immigration consequences advisement is to ensure that noncitizens are aware that there may be adverse immigration consequences and to allow them an opportunity to obtain personalized advice from counsel, consider the potential immigration consequences, bargain, if possible, for an immigration-safe plea (or one with less dire consequences), and ultimately, to make an informed decision whether to knowingly accept the immigration consequences of a conviction or to take their cases to trial. (§ 1016.5, subds. (b), (d).) The record demonstrates that Hernandez was deprived of this opportunity. Considering the totality of the circumstances, the fact that Hernandez received the immigration consequences advisement does not undermine her showing of error.

## B. Hernandez Has Established Prejudice

We further conclude Hernandez has established that these errors were prejudicial.

A defendant establishes prejudice by showing that there is a "reasonable probability" that they would not have entered the plea if they had "correctly understood its actual or potential immigration consequences" and their options for defending against those consequences. (*Vivar*, *supra*, 11 Cal.5th at p. 529.) "A reasonable probability does not mean more likely than not. [Citation.] Instead, it means merely a reasonable chance, which is more than an abstract possibility. [Citation.] In other words, a reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Carrillo*, *supra*, 101 Cal.App.5th at p. 19.) Because immigration consequences may be more important to a noncitizen defendant than any term of incarceration, the focus of this inquiry is on " 'what the defendant would have done, not whether the defendant's decision would have led to a more favorable result.' " (*Vivar*, at pp. 528–529.)

In determining whether there is a reasonable probability that Hernandez would not have entered the plea, we consider the "totality of the circumstances." (*Vivar*, *supra*, 11 Cal.5th at p. 529.) A defendant's assertion that they would not have entered the plea had they meaningfully understood its immigration consequences or their options for defending against those consequences must be corroborated by objective evidence. (*Id*. at p. 530.) Objective evidence may be presented through a defendant's declaration or testimony, declarations or testimony of others, or documentary evidence, including the record of the underlying criminal proceedings. (*Id*. at pp. 530–531.) It

includes evidence of "the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Id.* at p. 530.) Also relevant is "the defendant's probability of obtaining a more favorable outcome if [they] had rejected the plea," and "the difference between the bargained-for term and the likely term if [they] were convicted at trial." (*Espinoza, supra*, 14 Cal.5th at p. 320.) "These factors are not exhaustive" and "no single type of evidence is a prerequisite to relief." (*Id.* at p. 321.) Evidence relevant to the error inquiry will often also be relevant to the prejudice inquiry.

Considering the totality of the circumstances, Hernandez has established a reasonable probability that, had she meaningfully understood that her plea would result in the loss of her permanent resident status and deportation to Mexico, she would have attempted to negotiate an immigration-neutral plea or taken her case to trial. Hernandez testified that if she had known her conviction would subject her to mandatory deportation, she would not have taken the plea because she did not want to be "sent to Mexico." This testimony was corroborated by evidence of Hernandez's strong ties to the United States, which "provide compelling evidence in support of a finding of prejudicial error." (*Espinoza, supra*, 14 Cal.5th at p. 322.) She was 19 years old when she came to the United States. When she entered her plea, she had been living in the United States for 36 years and had been a permanent resident for over two decades. Her "entire family" lived in the United States, including her father, husband, five children, and 14 grandchildren, and she was regularly caring for two of her

grandchildren. Hernandez's testimony concerning these deep and longstanding ties to the United States is "objective evidence" that corroborates her assertion that she would not have taken the plea had she been aware of the immigration consequences of doing so. (*Ibid.*)

Hernandez's assertion is further corroborated by evidence of her behavior two years later, when she was apprehended at the airport and placed in removal proceedings. Rather than assenting to her removal from the United States, Hernandez contested her case in immigration court and sought to withdraw her guilty plea in state court.

Hernandez also has shown some reason to believe an immigration-neutral disposition of her charges was possible. (*Espinoza, supra,* 14 Cal.5th at p. 323.) She had no prior criminal record; as we have noted, "a defendant without an extensive criminal record may persuasively contend that the prosecutor might have been willing to offer an alternative plea without immigration consequences." (*Id.* at p. 324.) The record of her sentencing also suggests the prosecutor may have been open to negotiating: The probation department recommended that Hernandez be sentenced to probation and determined that if additional sanctions were required in the future, the low term of two years would be warranted. (See *id.* at p. 324; *Benitez-Torres, supra,* 112 Cal.App.5th at pp. 1269–1270.) The prosecution agreed to a sentence of probation with local time and to allow Hernandez to spend Christmas at home before being sentenced. This all suggests that Hernandez "would have had reason 'to expect or hope' that a plea deal without immigration consequences 'would or could have been negotiated.'" (*Espinoza,* at p. 324.)

Hernandez has also established that there is a reasonable probability that she would have gone to trial had she been unable to negotiate an immigration-neutral plea. Hernandez's testimony to that effect is corroborated by objective evidence. Her lack of criminal history, the fact that she pled guilty to the offenses as charged, and the relatively light potential sentence she faced suggest that she could reasonably have concluded that the risks of taking her case to trial were outweighed by the possibility that she could successfully defend against the charges and avoid mandatory deportation. (See *People v. Martinez* (2013) 57 Cal.4th 555, 564 [observing that "a defendant might decline to accept an offer if there is little to lose by rejecting it, particularly if acceptance would have significant adverse consequences"]; cf. *In re Lewallen* (1979) 23 Cal.3d 274, 278–279 [due process principles preclude a court from imposing a harsher sentence because a defendant exercises the right to a trial].)[7]

Finally, the Attorney General did not contest prejudice in the supplemental briefing filed in the Court of Appeal following

---

[7] In her briefing, Hernandez raises the possibility that, had she gone to trial, she could have asserted an entrapment defense. She also cites federal cases that provide examples of immigration-neutral dispositions that she argues may have been possible in her case. (See *People v. Martinez, supra*, 57 Cal.4th at p. 564 ["[T]he strength of the prosecution's case in relation to his or her own case is often a factor" when considering prejudice]; *Espinoza, supra*, 14 Cal.5th at p. 321 [a finding of prejudice may be supported by a "declaration from an immigration law expert explaining" whether the defendant "could have pleaded to alternative, immigration-safe dispositions"].) We do not consider these possibilities because Hernandez has not made a record to support them and has demonstrated prejudice with other evidence.

this Court's prior remands after *Vivar* and *Espinoza*. And in this Court, the Attorney General conceded that Hernandez has established prejudice. While we are not required to accept this concession, it provides further support for our conclusion that, had Hernandez meaningfully understood the immigration consequences of pleading guilty and the alternatives to doing so, there is a reasonable probability that she would have rejected the plea in the hope of obtaining "a more favorable outcome." (*Espinoza*, *supra*, 14 Cal.5th at p. 320.)

## III.   CONCLUSION

Reviewing the record independently, we conclude that Hernandez has established "prejudicial error damaging [her] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7(a)(1).) She has shown that she did not meaningfully understand that by pleading guilty, she was subjecting herself to mandatory deportation from the United States and triggering a bar to reentering the country, and that she did not receive the advice necessary to either meaningfully defend against or knowingly accept those consequences. She has further shown that, were it not for these errors, there is a reasonable probability that she would have rejected the plea offer and either attempted to negotiate a plea with less dire immigration consequences or taken her case to trial. Accordingly, we reverse the judgment and direct the Court of Appeal to remand this case to the trial court to enter an order granting Hernandez's section 1473.7 motion, vacate her convictions, and conduct further proceedings consistent with our opinion.

**GROBAN, J.**

**We Concur:**

**GUERRERO, C. J.**
**LIU, J.**
**KRUGER, J.**
**EVANS, J.**
**DANNER, J.**[*]

---

[*]     Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PEOPLE v. HERNANDEZ

S282186


Concurring and Dissenting Opinion by Justice Corrigan


I agree that, in ruling on a Penal Code section 1473.7, subdivision (a)(1) (section 1473.7(a)(1)) motion, the court must consider the totality of the circumstances. The Legislature has provided an avenue to vacate a conviction if the original plea was legally invalid because prejudicial error damaged the petitioner's ability to understand, defend against, or knowingly accept potentially adverse immigration consequences that might arise following a guilty or no contest plea. The Legislature and subsequent case law make clear that, in ruling on such a motion, the court must determine not simply what a defendant was *told* but whether they *meaningfully* understood the immigration consequences that might flow from their decision. (See *People v. Espinoza* (2023) 14 Cal.5th 311, 320 (*Espinoza*).)

Here we apply a relatively new and evolving statute on which we have not had the opportunity to provide specific guidance. It is important that we make clear not only what constitutes prejudicial legal error, but also how trial and appellate courts, as well as trial counsel, should approach their responsibilities going forward. Clarity on these issues is important for all concerned, and I suggest more is necessary than that which can be culled from the majority opinion. The majority concludes that "error" under section 1473.7(a)(1) occurred here, but it does not articulate what the perceived legal error was, who committed it, or what courts and counsel must

1

do going forward to protect defendants and avoid error. The majority opinion notes a petitioner cannot meet her burden by simply urging that she did not truly understand the immigration consequences of her plea, despite her direct responses to the court that she was informed of and understood them, realized she was telling the court she understood them, and had no additional questions about them. (See maj. opn., *ante*, at p. 13.) Generally, when concluding that an error has occurred, we are speaking in terms of legal error, not a litigant's later assertion that they, themselves, made an error in judgment or made a later-regretted decision. The majority opinion seems to refer to conduct unrelated to legal error by the court or counsel as "subjective error." (Maj. opn., *ante*, at p. 28.) All courts should be vigilant to recognize, guard against, and provide relief for legal error. However, an ill-defined "subjective error" standard is unworkable and does little to protect a defendant against legal error in the first place. It appears there may have been legal error here. We should direct the trial court to determine whether this is so, applying the guidance the statute and our opinion provide. In doing so, we should also articulate how courts and counsel should clarify whether a defendant knowingly agrees to accept the immigration consequences of her plea.

The statute itself calls for relief if the conviction is "legally invalid *due to prejudicial error* damaging the moving party's ability to meaningfully understand" the adverse immigration consequences that may befall them should they enter the proposed plea. (§ 1473.7(a)(1), italics added.) The plain meaning of the statute provides relief if legal error caused a lack of understanding. The factual record here is ambiguous on that question and arguably supports different inferences. Part of our

task here is to make plain what courts and counsel should do to ensure a proper plea in the first instance, and how to resolve subsequent questions in ruling on a section 1473.7(a)(1) petition.  Legal error may have occurred here and, in ruling on the motion to vacate, the trial court failed to adequately consider the totality of circumstances by focusing almost exclusively on what Ms. Hernandez was told rather than more broadly examining what she understood.  (See maj. opn., *ante*, at pp. 6–8.)  As a result, I would return this matter to the trial court for it to consider Ms. Hernandez's motion and determine the factual and credibility questions it raises.

As we and the Courts of Appeal have pointed out, it is certainly sufficient to show legal error if a defendant was misinformed, not properly informed, or not given the assistance of counsel who is aware of and adequately explains the potentially life-altering immigration consequences of a plea.  (See *Espinoza*, *supra*, 14 Cal.5th at p. 320; *People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*).)  Before adoption of section 1473.7(a)(1), courts in taking pleas often focused primarily on what information was given, not whether it was understood.  But the new statute makes clear that such a truncated inquiry may not be sufficient.  When it comes to immigration consequences, more is required of courts and counsel, and the record must reflect that sufficient steps were taken to ensure understanding.  Courts taking a plea must now take care to produce a record showing that a defendant actually understood the proper advice they were given and took it into account when entering their plea.  Without such a record, a court ruling on a later motion to vacate the plea is hobbled from the start.  What is required to secure relief is more than an assertion, sometimes made years after a plea, that the petitioner just did not

understand, no matter what they said at the time. What is required is identification of a legal error on the part of the court or counsel that prejudicially damaged the petitioner's ability to understand the immigration consequences to which they might be exposed. All the relevant evidence on that question should be taken into account, including the defendant's circumstances and events transpiring before, during, and after the plea. But, without a workable standard to identify legal error, it is difficult to imagine how a court or counsel can adequately protect a defendant and ensure the plea was properly entered in the first place.

At the time she entered her plea, Ms. Hernandez was 55 years old, having come to California at the age of 19. She became a lawful permanent resident in approximately 1985, nearly 30 years before this incident. She had five children, all of whom are citizens or lawful residents, and 14 grandchildren. There was no indication she had any exposure to the criminal justice system. It appears her involvement in the events at issue was motivated by a need to assist her son who suffered from a grave mental disability. According to the record here, including petitioner's own statements, she was arrested outside a store in Delano. Her car, in which she was the sole occupant, contained five bags of marijuana, weighing over 100 pounds. She told arresting officers she had gone to a vineyard where a man she did not know placed the bags in her car. She did not sell the marijuana. She was simply paid $2000 to deliver the bags to an agreed-upon location.

In light of these stark facts, Ms. Hernandez found herself in a difficult position. If she proceeded to trial and lost, she would face exposure to substantially greater punishment. If she entered a guilty or no contest plea, she faced a relatively brief

period of confinement and probation versus far more daunting potential consequences should she be convicted after a trial. For many defendants considering a plea bargain, the alternatives are much more clear and the discernable consequences much more direct: Should I enter a plea that reduces my risk of greater punishment or proceed to trial and hope to secure a better outcome? But when immigration consequences are in play, they may significantly alter a defendant's consideration. Immigration consequences can be particularly grave and may only arise in a distant and unpredictable future. Some of those consequences are beyond the ability of California's courts to control. The body of federal immigration law is complex and its enforcement can fluctuate over time, as this case and recent history make clear. These realities can greatly impact the way in which a given defendant weighs her options in agreeing to a plea. A defendant may be more willing to risk a negative trial outcome if dire immigration impacts are involved. Making an informed choice is more difficult for a defendant unfamiliar with the justice system and dependent on the assistance of an interpreter to communicate with both the court and her own counsel. The statute was enacted to address these particular challenges. It places a different and more demanding burden on the court and counsel. It has made those new safeguards retroactively available through the motion to vacate procedure. As a result of her plea, Ms. Hernandez served a total of 27 days in custody as a condition of probation which she successfully completed. (See maj. opn., *ante*, at pp. 5–6.) Now, however, she faces permanent deportation and separation from all her immediate family.

The section 1473.7(a)(1) motion to vacate the conviction turns on whether Ms. Hernandez's plea was invalid because

prejudicial legal error damaged her ability to meaningfully understand the potential immigration consequences of her plea when she entered it.  By the time of her hearing, her lawyer had died.   The totality of circumstances bearing on her understanding are mixed.  She appeared before the court with a lawyer of her own choosing.  Her communications with counsel and the court were done through an interpreter.  She signed and initialed forms that explicitly told her the plea "will result" in deportation.  The forms she signed and initialed represented that she had discussed the serious immigration consequences with counsel and understood them.  Her lawyer signed a form attesting that he had discussed the immigration consequences with her, reviewed the form Ms. Hernandez had signed and initialed, and was satisfied that she understood its contents. The interpreter certified that she had translated the content of the entire form into Spanish for Ms. Hernandez, who reported that she understood the contents. (See maj. opn., *ante*, at pp. 3– 4.)   The entire plea colloquy is contained in four pages of transcript.

However, other circumstances could be understood to suggest that, in reality, Ms. Hernandez did not understand the immigration consequences she might face.  The only time she appeared with counsel and an interpreter to decide on a plea bargain was at court on the day the plea was entered.  She had no experience with the criminal justice system.   She was dependent on an interpreter's assistance to communicate with both the court and her lawyer.  After entering her plea, she successfully completed probation.  Before traveling to her home country of Mexico, she sought and received her probation officer's permission for the trip.  She returned through regular air travel, using her own name, and presented herself and her

residency card to immigration and customs agents. At her motion hearing, she did not dispute that she signed and initialed the forms mentioned, but emphatically testified that she did not understand them and that they misrepresented what she was actually told by counsel and the interpreter. She insisted that, the signed form notwithstanding, she was never told that her plea would result in deportation. She signed and initialed the form because her lawyer instructed her to do so. She did not recall the court or the interpreter asking if she understood the forms she initialed and signed. If she had understood that her plea would result in deportation, she would not have entered it.

Ruling on the motion required the court to determine whether a legal error damaged Ms. Hernandez's ability to meaningfully understand the consequences of her plea when she entered it. It also required the court to assess the credibility of the petitioner's testimony offered both as to what she was told *and* whether she meaningfully understood the immigration consequences her plea entailed. The documents and plea colloquy reveal, and she does not dispute, that she signed and initialed the forms and stated that she understood their significance. But determining the adequacy of her understanding must also take into account the brief proceedings, both on and off the record, and the fact that they were dependent upon accurate linguistic interpretation. The determination is also informed by the undisputed facts that Ms. Hernandez sought permission to leave the country, returned through regular channels, and presented herself to immigration scrutiny.

The record here could support a finding of two kinds of errors. First, the initial plea colloquy itself was arguably insufficient to support a subsequent finding that Ms. Hernandez

meaningfully understood the immigration consequences she might face. To survive a section 1473.7(a)(1) challenge, an adequate inquiry should establish not only what a defendant was told about possible immigration consequences, but also whether the defendant was given a reasonable opportunity to meaningfully understand that admonition and decide for themselves whether to enter a plea. A written form provides some significant evidence that adequate advisements were given. Preparation of a plea form provides a formal structure for counsel, and an interpreter if needed, to discuss the advisements with the client. It also helps focus the defendant's attention and may identify any unanswered questions. But in taking the plea, the better practice is for the court to do more than just ask about the form. As the majority opinion observes: "The most direct evidence of a defendant's subjective understanding consists of the defendant's own statements to the court when entering the plea." (Maj. opn., *ante*, at p. 16.) A more complete record is achieved if the court directly asks the defendant whether they actually discussed immigration consequences with counsel and whether they understand they could be deported as Penal Code section 1016.5 provides. The court should make clear that the decision to enter a plea belongs to the defendant alone and not to counsel. It should also ask a defendant whether they need more time to confer with counsel or to further consider the plea decision. A subsequently challenged plea may rise or fall, in large measure, on whether the court made a clear and complete inquiry that anticipates and reasonably resolves potential areas of confusion.

A second potential error may be urged to exist here because the court, in ruling on the motion to vacate, did not adequately consider all the relevant circumstances, including

defendant's individual characteristics and the subsequent events shedding light on her previous understanding. While the court placed great weight on the plea forms and transcript, it is not clear from this record that it weighed that evidence against the opposite inference that, while Ms. Hernandez said she had been advised and understood her situation, in fact she did not. It is at least possible that both can be true. It is for the ruling court to decide whether meaningful understanding was achieved or, conversely, whether misrecollection or a pressing need to avoid difficult consequences accounts for less than credible testimony in support of the motion. This inquiry requires more than a mere document review. It also requires more than an "implied finding" on the question of credibility. (Maj. opn., *ante*, at p. 19.)

As the majority opinion properly points out, the burden is on the petitioner to demonstrate a legal error damaged her ability to meaningfully understand. Often this inquiry will require credibility determinations to which we defer. (See maj. opn., *ante*, at pp. 9–10.) But on appeal, we also test whether the court properly considered all the relevant circumstances bearing on the question. As the majority opinion observes, a defendant may certainly meet the burden by showing they were given incomplete or inaccurate advice about immigration consequences and that a mere assertion that they did not understand is not sufficient. (See maj. opn., *ante*, at p. 13.) At the motion hearing here, the court and parties were hampered in deducing all the historical facts due to defense counsel's demise. This case highlights the importance of a full and adequate inquiry by the court when it accepts the plea. Further, as the majority opinion observes, in facing a totality of circumstances review, it will generally be in a defendant's best

interest to create a robust record in support of the motion. Indeed, the production of a robust record is in both parties' best interest and its creation is part of the trial court's obligation when accepting a plea.

I disagree with the majority opinion's holding that we may independently reweigh the evidence to conclude on our own that Ms. Hernandez has established prejudicial legal error. (See maj. opn., *ante*, at pp. 18–23.)  First, the majority opinion does not identify just what legal error occurred.  Section 1473.7(a)(1) requires a finding of reasonable probability that, *due to cognizable legal error*, the petitioner did not meaningfully understand the immigration consequences of her decision and, had she done so, she would not have entered her plea.  (See *Espinoza, supra*, 14 Cal.5th at pp. 319–320; *Vivar, supra*, 11 Cal.5th at pp. 529–530.)  Those are, at the end of the day, both factual and credibility determinations which should be made in the first instance by a trial court applying the proper totality of circumstances test.  Here the majority opinion relies on substantial speculation and assertions not urged by Ms. Hernandez below.[1]  The remedy is for the matter to be remanded

---

[1]    In discussing its "subjective misunderstanding" test, the majority opinion mentions as factors whether there may have been possible defenses available or that an immigration-safe disposition might have been reached.  (See maj. opn., *ante*, at pp. 11–12.)  The admitted evidence contains no indication that there were any viable trial defenses available or that a different disposition was proposed by either side.  In making a record at the time of the plea, the court can inquire of both counsel whether alternative dispositions were discussed between the lawyers.  It must be mindful, however, not to infringe on the attorney-client privilege by probing the content of defense counsel's discussions about tactical decisions or defenses with the client.

so that Ms. Hernandez may make a fuller presentation and the trial court can resolve factual and credibility issues, then make a proper ruling considering all the relevant evidence. If the record produced shows that legal error damaged her ability to meaningfully understand the immigration consequences of her plea and accept them, the motion should be granted. That ruling, whether favorable or otherwise, can be tested on review to determine whether it is properly supported. I would reverse the judgment of the Court of Appeal with directions to remand the matter to the trial court for a new hearing on the motion to vacate.

**CORRIGAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Hernandez

---

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 9/8/23 – 5th Dist.
**Rehearing Granted**

---

**Opinion Nos.** S282186
**Date Filed:** August 13, 2026

---

**Court:** Superior
**County:** Kern
**Commissioner:** Steven M. Katz

---

**Counsel:**

Law Office of Jacob M. Weisberg and Jacob M. Weisberg for Defendant and Appellant.

Mehr & Soto, Michael Mehr; Christopher L. Haberman; Eda Katherine Tinto; and Holly S. Cooper for the Immigration Legal Resource Center, the Organization for the Legal Advancement of Raza, Inc., the Criminal Justice Clinic at the University of California Irvine School of Law and the University of California Davis School of Law Immigration Law Clinic as Amici Curiae on behalf of Defendant and Appellant.

Ricardo Garcia, Public Defender (Los Angeles), Graciela Martinez, Assistant Public Defender, Albert J. Menaster and Evan Franzel, Deputy Public Defenders, Tracy Macuga, Public Defender (Santa Barbara), Onyx M. Starrett, Deputy Public Defender, Claudia Bautista, Public Defender (Ventura), Brooke Lautz, Deputy Public Defender, David Joseph Sutton, Public Defender (Marin), and Antoinette Therese Taillac, Public Defender (Fresno), for the Los Angeles County Public Defender, the Santa Barbara County Public

Defender, the Ventura County Public Defender, the Marin County Public Defender and the Fresno County Public Defender as Amici Curiae on behalf of Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Michael J. Mongan, State Solicitor General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, and Aaron D. Pennekamp, Deputy State Solicitor General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jacob M. Weisberg
Law Office of Jacob M. Weisberg
5740 N. Palm Avenue, Suite 103
Fresno, CA 93704
(559) 930-7193

Aaron D. Pennekamp
Deputy State Solicitor General
1300 I Street
Sacramento, CA 95814
(916) 210-6661